UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   OTERO COUNTY HOSPITAL                          Case No. 11-11-13686 JL
ASSOCIATION, INC.,

Debtor.

UNITED TORT CLAIMANTS, as
individuals,[1]

Plaintiffs,
v.                                                     Consolidated Misc. Adv. No. 13-00007

QUORUM HEALTH RESOURCES, LLC,

Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion for Summary Judgment filed by

Defendant Quorum Health Resources, LLC ("QHR").  *See* Docket No. 118.  QHR seeks

judgment as a matter of law that if, after conducting a trial on the merits the Court finds QHR to

be negligent, then the doctrine of comparative fault - rather than joint and several liability -

applies in this case.  Plaintiffs United Tort Claimants (together "UTC") object on the grounds

that such a determination would constitute an impermissible advisory opinion at this stage in the

proceedings.  UTC also objects on the merits, arguing that QHR is jointly and severally liable for

any damage caused to UTC.  After considering the Motion for Summary Judgment, the response

thereto, and the supporting papers, and being otherwise sufficiently informed, the Court finds the

Motion should be DENIED.

---

[1] The "United Tort Claimants" consist of all of the plaintiffs in the adversary proceedings listed in the
Order Establishing Master Docket for Consolidated Matters, entered August 15, 2013 in Consolidated
Misc. Adv. No. 13-00007.  The Court consolidated such adversary proceedings for purposes of
conducting a single trial on liability.

SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted when the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986).

FACTS NOT SUBJECT TO MATERIAL DISPUTE[2]

1.      In 2005, QHR entered into an agreement with Otero County Hospital Association, Inc. d/b/a Gerald Champion Regional Medical Center ("GCRMC"), whereby QHR provided administrative services to the hospital. *See* Motion for Summary Judgment, ¶ 5; Agreement for Hospital Administrative Services attached as Exhibit D to the Motion for Summary Judgment (Docket No. 118-4).

---

[2] The Court finds the following facts for purposes of the instant Motion for Summary Judgment only. Such facts will not be treated as established in the case.

2

2.      Christian Schlicht, M.D. ("Dr. Schlicht") was recruited to perform certain medical services at GCRMC the following year.  *See* Motion for Summary Judgment, ¶ 2; Physician Employment Agreement attached as Exhibit B to the Motion for Summary Judgment (Docket No. 118-2).

3.      Frank Bryant, M.D. ("Dr. Bryant") performed certain medical services at GCRMC, though he was not an employee of the hospital or QHR.  *See* Motion for Summary Judgment, ¶ 4; Deposition of Frank Bryant, M.D. taken August 15, 2011 attached as Exhibit C to the Motion for Summary Judgment (Docket No. 118-3) (the "Bryant Deposition") at 22:13-16.

4.      At various times relevant to this action, Dr. Bryant served as GCRMC's Chief of Staff and on several hospital committees.  *See* Motion for Summary Judgment, ¶ 3; UTC's Opposition Response to Motion for Summary Judgment (Docket No. 122) (the "Response"), ¶ 3; Bryant Deposition at 22:17-25 – 23:1-17.

5.      Each plaintiff represented by UTC claims damages as a result of a surgery and/or procedure performed by Dr. Schlicht and/or Dr. Bryant.  *See* Motion for Summary Judgment, ¶ 1; Response, ¶ 1.

6.      None of QHR's employees, officers, or agents acted with the intent to injure or damage any of the claimants.  *See* Motion for Summary Judgment, ¶ 7; Response, ¶ 7.

DISCUSSION

QHR seeks a determination that the doctrine of comparative fault, rather than joint and several liability, applies in the consolidated adversary proceedings.  As an initial matter, UTC argues that the issue is not ripe for review and that QHR is seeking an advisory opinion.  The Court is not unsympathetic with this position.  QHR's Motion indeed presents a hypothetical question.  If QHR prevails at the trial on liability, the Court will not need to address the issue of

3

how to apportion fault. In any event, as discussed below, the Court need not rule on whether

comparative fault, rather than joint and several liability, applies at this time because the facts on

summary judgment are undeveloped.

    1. The Application of Comparative Fault and Joint and Several Liability

    Prior to 1982, "joint and several liability among concurrent tortfeasors was the norm in

New Mexico." *Enriquez v. Cochran,* 126 N.M. 196, 219, 967 P.2d 1136, 1159 (Ct. App. 1998).

"[W]here more than one actor's negligence was found to be the proximate cause of a person's

injuries, each actor was potentially liable to the plaintiff for the full amount of damages found,

rather than only the actor's proportionate share of fault." *Id. See also Gulf Ins. Co. v. Cottone,*

140 N.M. 728, 733, 148 P.3d 814, 819 (Ct. App. 2006) ("Where joint and several liability

applies, each tortfeasor is liable for the entire injury, regardless of proportionate fault, leaving the

defendants to sort out among themselves individual responsibilities based on proportional

indemnification or contribution."). The move to a comparative negligence scheme began with

the rulings in *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981) and *Bartlett v. N.M. Welding*

*Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct. App.1982). In *Bartlett,* for example, the New

Mexico Court of Appeals observed that the notion that each tortfeasor was fully responsible for

"one indivisible wrong" was obsolete. 98 N.M. at 158, 646 P.2d at 585.

    The New Mexico Legislature codified the principles of *Scott* and *Bartlett* in 1987. The

relevant statute provides:

> In any cause of action to which the doctrine of comparative fault applies, the doctrine
> imposing joint and several liability upon two or more wrongdoers whose conduct
> proximately caused an injury to any plaintiff is abolished except as otherwise provided
> hereafter. The liability of any such defendants shall be several.

4

N.M.S.A. 1978, § 41-3A-1(A).  The statute further provides that a defendant who is severally liable will only be responsible for the portion of harm he or she actually caused, and not jointly liable for the harm another party caused:

> In causes of action to which several liability applies, any defendant who establishes that the fault of another is a proximate cause of a plaintiff's injury shall be liable only for that portion of the total dollar amount awarded as damages to the plaintiff that is equal to the ratio of such defendant's fault to the total fault attributed to all persons, including plaintiffs, defendants and persons not party to the action.

N.M.S.A. 1978, § 41-3A-1(B).

New Mexico Courts have applied Section 41-3A-1 to mean that "when concurrent tortfeasors negligently cause a single, *indivisible* injury, the general rule is that each tortfeasor is severally responsible for its own percentage of comparative fault for that injury."  *Gulf Ins. Co.,* 140 N.M. at 734, 148 P.3d at 821 (emphasis in original).  *See also Gutierrez v. City of Albuquerque,* 125 N.M. 643, 647, 964 P.2d 807, 811 (1998) ("Under our comparative negligence system, each negligent party is charged an amount representing its percentage of fault."); *Garcia v. Gordon*, 136 N.M. 394, 397, 98 P.3d 1044, 1047 (Ct. App. 2004) (noting that when two or more parties cause a single injury, comparative fault "holds all parties fully responsible for their own respective acts to the degree that those acts have caused harm").

Although comparative fault is the general rule in New Mexico, joint and several liability applies in certain limited circumstances.  In situations involving concurrent tortfeasors (*i.e.* two or more parties who cause a single, indivisible injury), "[e]xceptions are made for [1] intentional torts, [2] vicarious liability, [3] products liability cases, and [4] other situations having a sound basis in public policy." *Saiz v. Belen Sch. Dist.*, 113 N.M. 387, 400, 827 P.2d 102, 115 (1992) (citing N.M.S.A. 41-3A-1(C)).[3]  Joint and several liability also applies in situations involving

---

[3] Section 41-3A-1(C) provides, in full:
    The doctrine imposing joint and several liability shall apply:

5

successive tortfeasors. *Payne v. Hall*, 139 N.M. 659, 664, 137 P.3d 599, 604 (2006). Of the identified exceptions, only the public policy exception and the successive tortfeasor doctrine are at issue here.

A.      *The Public Policy Exception*

QHR argues that, as a matter of law, there is not a "sound basis in public policy" for applying joint and several liability in this case. UTC contends that the public policy exception applies because QHR brought an inherently dangerous procedure into the hospital. According to UTC, the procedure performed by Dr. Bryant and Dr. Schlicht involved injecting a dangerous substance into patients' spines.[4]

As a matter of public policy, joint and several liability applies in "cases involving parties who have a nondelegable duty to control the manner in which peculiarly or inherently dangerous work is performed." *Gulf Ins. Co. v. Cottone,* 140 N.M. 728, 735, 148 P.3d 814, 821 (Ct. App. 2006). "If a party has the authority to control the manner in which an inherently dangerous activity is conducted, that party has a corresponding nondelegable duty to take the precautions necessary to protect others from any peculiar risk of physical harm arising from such activity." *Id.* Courts impose joint and several liability in such situations to encourage those who engage in inherently dangerous activities to take necessary precautions. *Saiz v. Belen Sch. Dist*., 113 N.M. 387, 394, 827 P.2d 102, 109 (1992).

_____

(1) to any person or persons who acted with the intention of inflicting injury or damage;
(2) to any persons whose relationship to each other would make one person vicariously liable for the acts of the other, but only to that portion of the total liability attributed to those persons;
(3) to any persons strictly liable for the manufacture and sale of a defective product, but only to that portion of the total liability attributed to those persons; or
(4) to situations not covered by any of the foregoing and having a sound basis in public policy.

[4] UTC also asserts more generally that QHR's alleged negligence implicates a public policy exception to several liability that protects the health and safety of New Mexico's citizens. QHR did seek summary judgment on that issue; the Court therefore did not address it.

6

QHR has not pointed to any evidence regarding whether the surgeries performed by Dr. Bryant or Dr. Schlitcht were inherently dangerous.  Instead, it argues that the inherently dangerous activity exception to several liability does not apply because QHR was not the employer of the doctors.  Assuming without deciding that this is true, such facts do not conclusively establish the exception is inapplicable.  The inherently dangerous activity test focuses on control, not the employment relationship between the parties.  As the New Mexico Court of Appeals explained:

> [T]he relationship between the owner/employer and the independent contractor is not, and should not be, the focus of the inquiry in these cases. That inquiry is necessary only if the aim is to divide liability between them. If the law imposes strict liability for failure to undertake reasonable precautions, the more pertinent inquiry is the connection of the parties to the inherently dangerous activity and their respective ability to control or influence how the work is to be done and how the peculiar risks raised by the activity are to be handled.

*Enriquez v. Cochran*, 126 N.M. 196, 223-224, 967 P.2d 1136, 1163-1164 (Ct. App. 1998).[5]  In *Enriquez,* the court found that Boy Scouts of America was jointly and severally liable for the injuries that an employee of a separately-incorporated local affiliate sustained while felling large trees.  In imposing such liability on Boy Scouts of America - which was not the employer of the affiliate or the plaintiff - the court found that the inherently dangerous activity exception "can be applied to a factual situation not involving a property owner or other employer of an independent contractor."  *Id*. at 222, 1162.

The remaining undisputed facts do not fully define the nature of the connection between QHR and the allegedly dangerous procedures.  QHR's statement of material facts recites that Dr.

---

[5] *See also Gulf Ins. Co.,* 140 N.M. at 736, 148 P.3d at 822 (examining the connection between the defendants and the allegedly dangerous activity to determine whether the defendants had any ability to control or influence how the activity was undertaken); *Abeita v. N. Rio Arriba Elec. Coop.,* 124 N.M. 97, 104, 946 P.2d 1108, 1115 (Ct. App. 1997) (declining to apply the inherently dangerous activity exception where the defendant-electrical company had no authority to halt a dangerous construction project even though it had other non-delegable duties with regard to on-site safety).

Bryant and Dr. Schlicht were not employees of QHR, QHR's relationship with the hospital was solely contractual, and under the contract QHR only provided administrative services related to non-medical aspects of the hospital's business. *See* QHR's Facts Nos. 2, 4, and 5. As evidentiary support, QHR proffered, among other things, an Agreement for Hospital Administrative Services. After carefully reviewing that agreement, along with the opinions expressed in the report of Michael J. Peterson proffered by UTC, the Court is convinced that fact issues remain as to whether QHR had the ability to control or influence whether, or how, the surgeries and procedures were performed. QHR has therefore not established that, as a matter of law, the public policy exception allowing for joint and several liability is inapplicable.

### B. *Successor Tortfeasor Doctrine*

Next, QHR contends UTC cannot establish joint and several liability using the successive tortfeasor doctrine. As distinguished from concurrent tortfeasors, who together cause a single, indivisible injury, successive tortfeasors cause "separate *divisible* injuries." *Payne v. Hall*, 139 N.M. 659, 664, 137 P.3d 599, 604 (2006) (emphasis in original). "[A] first injury is caused by an original tortfeasor. That injury then causally leads to a second distinct injury, or a distinct enhancement of the first injury, caused by a successive tortfeasor." *Id.* If the successive tortfeasor doctrine applies, the original tortfeasor is jointly and severally liable "for the full extent of both injuries, those caused by both the original tortfeasor and the successive tortfeasor." *Id.* The second, or "successive" tortfeasor "is only responsible for the second injury or for the distinct enhancement of the first injury." *Id.* "A classic example of successive tortfeasor liability is an injury [such as a car accident] followed by negligent medical treatment that enhances the initial injury." *Gulf Ins. Co. v. Cottone,* 140 N.M. 728, 734, 148 P.3d 814, 820 (Ct. App. 2006).

8

The critical element with respect to successive tortfeasor liability is the existence of two separate, casually distinct injuries. *Payne,* 139 N.M. at 669, 137 P.3d at 609 ("As emphasized throughout this opinion, the critical question for the jury to decide was whether the [original tortfeasors's] negligence caused a discrete injury, separate from injuries inflicted at the Hospital."); *Gulf Ins. Co.,* 140 N.M. at 734, 148 P.3d at 820 ("Two distinct injuries caused by distinct agents *must exist* for successive tortfeasor liability to apply.") (emphasis added). Thus, if multiple tortfeasors engaged in various negligent acts but together caused only one injury, the successive tortfeasor doctrine does not apply.

Here, QHR argues that each claimant only suffered one injury. According to QHR, the claimants' injuries arose solely from the back surgeries performed by Dr. Bryant and Dr. Schlicht. QHR may very well be correct; the back surgeries have certainly been the main focus of this litigation. However, the only evidence QHR offered to support its contention is the following excerpt from one tort claimant's complaint:

> Operating the Hospital such that this negligent procedure was performed on Plaintiff led to completely avoidable medical catastrophes that caused Plaintiff irreversible damage and permanent suffering.

Such statement does not by itself establish that each claimant represented by the UTC only suffered a single, indivisible injury. QHR has therefore not carried its burden of establishing that, as a matter of law, the successor tortfeasor doctrine does not apply in this case. If, after hearing more evidence, the Court determines that a claimant did not suffer any separate, casually distinct injuries other than the harm they suffered as a result of the back surgery, QHR will not be treated as a successive tortfeasor with respect to that claimant.

The Court concludes that the evidence presented on summary judgment is insufficient to establish that comparative fault, rather than joint and several liability, applies in this case.

Because such a determination will become moot if QHR prevails on the issue of liability, the

Court will defer any further ruling on how to apportion fault until after the trial set for September

2014.

In addition to denying the Motion for Summary Judgment, UTC asks the Court to

sanction QHR for allegedly filing the Motion as a tactical ploy to inject uncertainty into the

parties' mediation efforts. UTC also complains that QHR failed to determine whether the

Motion was opposed before filing it in violation of NM LBR 9013-1.1(b). These arguments are

unavailing. Although the Motion for Summary Judgment may be deficient, the filing does not

rise to the level of bad faith conduct. Further, QHR's Motion describes the attempts made to

contact UTC and attaches an e-mail from QHR's counsel to UTC's counsel sent roughly 22

hours before the Motion was filed. *See* NM LBR 9013-1.1(b) (requiring the movant to

"determine whether or not the motion will be opposed" or, if that is not possible, to "recite the

the attempts made to contact the opposing party"). Under the circumstances of this case, the

Court finds that QHR did not violate NM LBR 9013-1.1(b).

CONCLUSION

Based on the foregoing, QHR's Motion for Summary Judgment will be denied. The

Court will enter a separate order consistent with this memorandum opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: June 11, 2014

COPY TO:

> Tamara Safarik & Joe L. McClaugherty
> P.O. Box 8680
> Santa Fe, NM 87504-8680

John A. Klecan
One North Central, Suite 900
Phoenix, AZ 85004

Lisa Curtis
301 Gold Avenue SW #201
Albuquerque, NM  87102

Bernard R Given, II
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4120

Paul M Fish
P.O. Box 2168
Albuquerque, NM 87103-2168