## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re: OTERO COUNTY HOSPITAL ASSOCIATION, INC.,            No. 11-11-13686 JL

    Debtor.

UNITED TORT CLAIMANTS, as individuals,[1]

    Plaintiffs,                                                      Misc. Proc. No. 13-00007 J
                                                                         Adversary Nos:

       v.                                                       12-1204j through 12-1216j,
                                                                         12-1208j through 12-1223j,
                                                                         12-1235j, 12-1238j through
                                                                         12-1249j, 12-1251j through
                                                                         12-1261j, 12-1271j, 12-1276j and
                                                                         12-1278j.

QUORUM HEALTH RESOURCES, LLC,

    Defendant.

## MEMORANDUM OPINION ON QUORUM HEALTH RESOURCES, LLC'S MOTION FOR SUMMARY JUDGMENT (Docket No. 317)

The Court consolidated the above-referenced adversary proceedings (together, the "Adversary Proceedings") for the purpose of conducting a bifurcated trial on the duty and breach elements of the UTC's negligence claims asserted against Quorum Health Resources, LLC ("QHR") based on its management of Otero County Hospital Association, Inc., d/b/a Gerald Champion Regional Medical Center (the "Hospital"). With the consent of the parties, the Court also determined as part of that trial whether the doctrine of joint and several liability or the doctrine of comparative fault applies to the UTC's claims. All other issues, including the causation and damages elements of the UTC's negligence claims, were reserved for later proceedings. The Court made detailed findings of fact and conclusions of law in its Amended

---

[1]The United Tort Claimants ("UTC") consist of all the plaintiffs named in the adversary proceedings identified by number in the above caption.

Memorandum Opinion entered March 18, 2015[2] following the first phase of the bifurcated trial on the merits. Thereafter, the Court again consolidated the Adversary Proceedings for the purpose of conducting a bifurcated trial on the causation element of the UTC's negligence claims against QHR, comparative fault issues, and certain matters relating to damages. *See* Order Consolidating Adversary Proceedings entered March 27, 2015 – Master Docket No. 297.

Following the entry of the Court's Memorandum Opinion, QHR filed a motion seeking summary judgment with respect to the claims of: 1) members of the UTC whose medical procedures were performed at the Hospital before July 21, 2007; and 2) members of the UTC who did not undergo percutaneous disc arthroplasty, also referred to as PDA. *See* QHR motion for summary judgment ("Motion" or "Motion for Summary Judgment") – Master Docket No. 317. The UTC oppose the Motion, asserting that the Motion does not comply with the requirements of Fed.R.Civ.P. 56, that issues of material fact preclude summary judgment, and that the Motion is premature because the UTC have not had a full opportunity to conduct discovery on causation issues. *See* UTC's response to the Motion ("Response") – Master Docket No. 334. The UTC submitted an affidavit of Felicia C. Weingartner, Esq. ("Affidavit") in support of their request for additional discovery before fully responding to the Motion. QHR also filed a reply. *See* Master Docket No. 338. The Court has considered the Motion, the Response, QHR's reply in support of the Motion, and the evidence submitted by the parties.

---

[2] The Amended Memorandum Opinion, entered March 18, 2015 and docketed in Misc. Proceeding No. 13-00007 as Master Docket No. 286, amended and superseded the original memorandum opinion entered February 27, 2015 to correct clerical errors in the original opinion. *See* Notice of Amended Memorandum Opinion and Amended Order Resulting from Corporate Liability Trial – Master Docket No. 288. Pursuant to orders of the Court, documents relating to the issues of duty, breach of duty, causation, and comparative fault filed or entered in Misc. Proceeding No. 13-00007 constitute the filing or entry of the documents on the dockets of each individual adversary proceeding to which Misc. Proceeding No. 13-00007 relates. The docket maintained for the Misc. Proceeding is referred to in this Opinion as the "Master Docket." The Amended Memorandum Opinion hereinafter is called the "Memorandum Opinion."

-2-

For the reasons explained below, the Court will grant the Motion as to members of the UTC whose medical procedures occurred before July 21, 2007, and deny the Motion as to members of the UTC who underwent procedures other than PDA after July 21, 2007.[3]  The Court will also deny the UTC's request under Fed.R.Civ.P 56(d) for an opportunity to conduct additional discovery before fully responding to the Motion.

<div align="center">SUMMARY JUDGMENT STANDARDS</div>

Summary judgment, governed by Fed.R.Civ.P. 56, will be granted when the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056.  "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)).  "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through

---

[3] The statement of facts in the Motion identifies three individuals who are not Plaintiffs in the Adversary Proceedings:  Alonzo Hall, Peter Luna, and Shirley Modisett.  *See* Motion, ¶¶ 6 and 9.  QHR does not appear, however, to seek summary judgment as to those individuals.  In any event, because the Court does not have *in personam* jurisdiction to adjudicate any claims by persons who are not parties to litigation before it, the Court makes no ruling as to those individuals.  *See In re A.J. Mackay Co.*, 50 B.R. 756, 761 (D. Utah 1985)("A fundamental principle of jurisdiction is that judgment on an issue is binding only as to the parties or property before the court.  A court has no jurisdiction to issue a judgment unless either in rem or in personam jurisdiction has been invoked . . . .  Neither the rights nor liabilities of a third person not a party to a lawsuit can be adjudicated in that lawsuit.").

<div align="center">-3-</div>

affidavits or other supporting evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

New Mexico Local Bankruptcy Rule 7056-1(c) provides that the party opposing summary judgment must: 1) list the material facts as to which the party contends a genuine fact exists; 2) "refer with particularity to those portions of the record upon which the opposing party relies;" and 3) "state the number of the movant's fact that is disputed."  NM LBR 7056-1(c). Properly supported material facts set forth in the movant's motion are "deemed admitted unless specifically controverted" by the party opposing summary judgment.  NM LBR 7056-1(c).

## FACTS NOT SUBJECT TO GENUINE DISPUTE

The Motion, Response, Reply, and supporting evidence establish that there is no genuine issue regarding the following facts:

1.      James Richardson became the interim Chief Executive Officer ("CEO") of the Hospital on July 19, 2007.

2.      Dr. Christian Schlicht, then an employee of the Hospital, sent a letter to the Hospital addressed to "Administration" dated July 21, 2007 responding to Dr. David Masel's assertions that Dr. Schlicht was performing experimental surgery (the "July 21, 2007 Letter").

3.      The CEO became aware of the July 21, 2007 Letter within a few days of his arrival at the Hospital.

4.      The following members of the UTC underwent medical procedures at the Hospital before July 21, 2007:

| Name | Medical Procedure Date |
|---|---|
| Edna Chavez | 03/14/07 |
| Maria Coyazo | 04/25/07 |
| James Cross | 07/17/07 |
| Marjorie Curtis | 04/11/07 |
| Dale Fox | 03/21/07 |

-4-

| | |
|---|---|
| Darrell Gilmore | 04/16/07 |
| Melissa Mackechnie | 07/11/07 and 07/12/07 |
| John O'Byrne | 07/05/07 |
| Barbara Olson | 07/11/07 and 8/8/07 |
| Susan Schwarzenegger | 07/18/07 |
| David Warden | 02/01/07 |
| Ronald Whiteley | 06/26/07 |
| Judy Ferguson[4] | 03/26/07 and 03/29/07 |

5. Percutaneous disc arthroplasty, also called PDA, is an experimental procedure.

6. The following members of the UTC underwent medical procedures at the Hospital

   other than PDA, performed by Dr. Bryant, Dr. Schlicht, or Dr. Bryant together with

   Dr. Schlicht, on the following dates:

| Name | Medical Procedure Date |
|---|---|
| Theresa Crawford | 06/19/08 |
| Joel Crossno | 09/18/09 and 11/19/09 |
| Judy Ferguson | 03/26/07 and 03/29/07 |
| Frank Guerrero | 09/16/08 |
| Kent Gwynne | 07/23/07 |
| Mickie Francis | 04/22/10 |
| Melissa Mackechnie | 07/11/07 and 07/12/07 |
| Barbara Olson | 07/11/07 and 08/08/07 |

7. Joel Crossno and Mickie Francis underwent their medical procedures at the Hospital

   well after Dr. Schlicht had left Alamogordo.

   In addition, the Court's findings of fact contained in the Memorandum Opinion establish

the following facts:

---

[4] QHR identified Judy Ferguson as a member of the UTC who did not have the PDA procedure but did not include her in the list of UTC members who underwent a medical procedure before July 21, 2007. *See* Motion, ¶¶ 6 and 9. The UTC do not dispute that Ms. Ferguson did not undergo PDA, but did not expressly state whether the medical procedure date identified in ¶ 9 of QHR's statement facts is disputed. *See* Response, ¶ 6. Because QHR's citation to the record supports such fact (*see* Docket No. 314, Exhibits to Motion, filed under seal), and because the UTC offered no evidence to contest it, the Court finds it appropriate to identify Ms. Ferguson as a member of the UTC whose medical procedure occurred before July 21, 2007.

Similarly, the UTC did not expressly state whether they dispute the dates of the medical procedures identified above in paragraph 6 for members of the UTC who underwent procedures at the Hospital other than PDA. *See* Response, ¶ 6. The UTC offered no evidence to contest those dates. Because QHR attached to its Motion evidence to support the medical procedure dates for members of the UTC who did not undergo PDA, the Court will treat such dates as not subject to genuine dispute.

8.      Within a few days after James Richardson took over as interim CEO of the

Hospital on July 19, 2007, the Hospital received the July 21, 2007 Letter and an issue

thereby came to Mr. Richardson's attention about whether Dr. Schlicht was improperly

performing experimental surgery on patients of the Hospital.  Memorandum Opinion, pp.

38-39, 78.[5]

9.      QHR's only other breach of duty as it relates to the UTC was the grant of

temporary privileges to Dr. Schlicht to perform medical procedures on patients at the

Hospital.  However, no procedures were actually performed under the temporary

privileges.  Memorandum Opinion, p. 77.

10.     Both Dr. Bryant and Dr. Schlicht participated in performing the PDA procedure.

Memorandum Opinion, p. 36.

<div align="center">DISCUSSION</div>

A.      <u>The UTC's Request for Additional Discovery Before Fully Responding to the
        Motion for Summary Judgment</u>

As an initial matter, the UTC ask the Court to defer ruling on the Motion so they may

conduct additional discovery essential to fully respond to the Motion.  Federal Rule of Civil

Procedure 56(d) allows a nonmovant to request the Court to defer its consideration of or to deny

a motion for summary judgment upon a showing, by affidavit or declaration, that the nonmoving

party "cannot present facts essential to justify its opposition" to a motion for summary judgment.

*See* Fed.R.Civ.P. 56(d)(1), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056.[6]

---

[5] In addition, no evidence was presented at the bifurcated trial on duty and breach of duty, and the Court made no
finding, that QHR was aware of Dr. Masel's experimental surgery assertion before the issue came to Mr.
Richardson's attention a few days after July 19, 2007.  *See* Memorandum Opinion, pp. 5-53, regarding the Court's
findings.

[6] Rule 56(d) provides:
        If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential
        to justify its opposition, the court may:
                (1) defer considering the motion or deny it;

The Affidavit filed in support of the request asserts that to fully respond to the Motion, the UTC need to conduct discovery on comparative fault and causation issues. The Affidavit lacks the required specificity regarding what facts or information could be obtained in discovery necessary for the UTC to respond fully.

This Court ordinarily takes a liberal approach in granting a nonmovant's request under Fed.R.Civ.P. 56(d) to defer ruling on a motion for summary judgment. But where it is clear, as here, that the nonmovant does not need additional discovery to respond fully, relief under Fed.R.Civ.P. 56(d) should be denied.

Although it is not entirely clear to the Court what facts the UTC seek to discover if a ruling on the Motion is delayed, they appear to argue that they need discovery regarding whether "Mr. Richardson was aware of or reviewed the letter prior to the date on the letter of July 21, 2007" or whether QHR otherwise was aware of Dr. Masel's experimental surgery assertion before July 21, 2007. *See* Response, ¶ 3. The Court disagrees that this provides a sufficient reason for relief under Rule 56(d). QHR's awareness of Dr. Masel's experimental surgery assertion and its actions in response were at issue in the first phase of the trial on duty and breach of duty. That phase of the trial has concluded. The Court made detailed findings regarding how QHR became aware of Dr. Masel's experimental surgery assertion and what QHR did in response. *See* Memorandum Opinion, pp. 38-45. The Court relied on those findings to support its conclusion that QHR breached its duty of care by how it responded after learning of the assertion. *Id*. at 78-82. QHR may not re-litigate those issues in the causation or damages phases of the trial.

---

<div style="font-size:smaller">

(2)  allow time to obtain affidavits or declarations or to take discovery; or
(3)  issue any other appropriate order.

Fed.R.Civ.P. 56(d), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056.

</div>

As explained more fully below, based on undisputed facts and facts the Court previously found in the Memorandum Opinion, the Court concludes that QHR's negligence did not, as a matter of law, cause injuries suffered as a result of medical procedures performed at the Hospital before July 21, 2007. As a result, there are no facts the UTC need to discover to respond fully to QHR's request for summary judgment on claims based on medical procedures performed before July 21, 2007. To the extent the Motion seeks judgment against members of the UTC who underwent procedures other than PDA after July 21, 2007, the Court's denial of summary judgment on those claims renders unnecessary the UTC's request to delay consideration of the Motion on those claims pursuant to Rule 56(d).

      B.    <u>The Court's Ruling on QHR's Duty and Breaches of Duty from the First Phase of the Trial</u>

A claim for negligence under New Mexico law[7] "requires that the plaintiff establish four elements: (1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff [*i.e.* damages], and (4) the breach of duty as a cause of the injury." *Zamora v. St. Vincent Hosp.* 335 P.3d 1243, 1249 (2014)(citation omitted).[8] In the bifurcated trial on the elements of duty and breach of duty, the Court concluded that QHR owed a direct duty of care to the UTC, consistent with its role, administrative responsibilities, and control, to ensure that the Hospital implemented and followed appropriate procedures to protect the health and safety of the Hospital's patients. *See* Memorandum Opinion, p. 71. The Court explained that the duty flows directly to patients—who are the intended beneficiaries of such procedures—and includes: (1) the duty to appropriately involve

---

[7] New Mexico law applies to the UTC's negligence claims. *See Henderson v. Bd. of Cnty. Comm'rs for San Miguel Cnty.,* 534 Fed.Appx. 686, 688 (10th Cir. 2013)(applying the substantive law of the forum state to negligence claims).

[8] *See also Herrera v. Quality Pontiac,* 134 N.M. 43, 47-48, 73 P.3d 181, 185-186 (2003)("Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages.").

medical staff in evaluating medical issues; and (2) the duty to inform the board and the medical staff about issues relating to patient safety known or that should be known by the hospital management company. *Id.*

The Court found that QHR breached its duty of care in two respects: first, QHR breached its duty when the Hospital's chief executive officer granted temporary privileges to Dr. Schlicht to perform procedures on patients of the Hospital;[9] and second, QHR breached its duty by how it reacted to the July 21, 2007 Letter. QHR breached its duty of care in reacting to the July 21, 2007 Letter by: 1) failing to inform the Hospital's board or its executive committee of an assertion by Dr. Schlicht's proctor that Dr. Schlicht was performing experimental surgery on the Hospital's patients; 2) failing to involve the Hospital's medical staff by requesting the Hospital's Medical Executive Committee ("MEC") to conduct a focused review of Dr. Schlicht pursuant to the Hospital's Medical Staff Bylaws;[10] and 3) failing to inform the Hospital's board or its executive committee that such a request had been made. *See* Memorandum Opinion, pp. 80 – 81 and 92.

        C.      <u>The pre-July 21, 2007 Medical Procedures</u>

Because the Court found a breach of duty based on how QHR reacted to the July 21, 2007 Letter, QHR contends that the failure to request the MEC to investigate Dr. Schlicht could not have caused injuries to patients whose medical procedures were performed before that date.[11] QHR therefore seeks summary judgment in its favor on any claims based on medical procedures performed before July 21, 2007.

---

[9]The Court found further that Dr. Schlicht did not perform any procedures on any members of the UTC under the temporary privileges. *See* Memorandum Opinion, p. 77.
[10]The Medical Staff Bylaws use the terms "focused review" and "investigation" interchangeably. *See* Medical Staff Bylaws – Exhibit Q from the bifurcated trial ("Article VI Focused Review of Medical Staff Member Conduct" and 6.2 "A request for investigation of the conduct of a member of the Medical Staff . . .").
[11]QHR also argues that it had no duty to take any action to prevent any surgeries or procedures that Dr. Schlicht performed before July 21, 2007.

The UTC oppose summary judgment on claims arising from medical procedures performed before July 21, 2007 on two grounds: first, that QHR failed to support its assertions of fact regarding which procedures are experimental; and second, that it still has the right to present evidence at the trial on causation regarding whether QHR was aware of or reviewed the July 21, 2007 Letter or was otherwise aware of Dr. Masel's experimental surgery assertion prior to July 21, 2007. *See* Response ¶ 3. The UTC do not dispute the dates of the medical procedures identified in the Motion.[12]

For a member of the UTC to prevail, each of the four elements necessary to establish a negligence claim must be satisfied, including the causation element at issue. The causation element concerns "whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Herrera,* 134 N.M. at 48, 73 P.3d at 186 (internal quotation marks and citation omitted). "An act or omission may be deemed a 'proximate cause' of an injury if it contributes to bringing about the injury, if the injury would not have occurred without it, and if it is reasonably connected as a significant link to the injury." *Talbott v. Roswell Hosp. Corp.,* 138 N.M. 189, 196, 118 P.3d 194, 201 (Ct.App. 2005)(citation omitted). *Accord Lujan v. New Mexico Dept. of Transp.*, 341 P.3d 1, 10 (N.M. Ct.App. 2014).[13] Causation issues may be determined as a matter of law "'when facts regarding causation are

---

[12] The UTC do not dispute that the medical procedures performed on Edna Chavez, Maria Coyazo, James Cross, James Cross, Marjorie Curtis, Dale Fox, Darrell Gilmore, Melissa Mackechnie, John O'Byrne, Susan Schwarzenegger, David Warden, Ronald Whiteley, and Judy Ferguson occurred prior to July 21, 2007. In addition, the UTC does not dispute that Barbara Olson underwent a medical procedure at the Hospital before July 21, 2007 and another procedure after that date.

[13] New Mexico's Civil Uniform Jury Instruction defines "Causation (Proximate Cause)" as follows:
An [act] [or] [omission] [or] [ _____ (*condition*)] is a "cause" of [injury] [harm] [_____ (*other*)] if[, unbroken by an independent intervening cause,] it contributes to bringing about the [injury] [harm] [_____ (*other*)] [, and if injury would not have occurred without it]. It need not be the only explanation for the [injury] [harm] [_____ (*other*)], nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a "cause", the [act] [or] [omission] [or] [_____ (*condition*)], nonetheless, must be reasonably connected as a significant link to the [injury] [harm].
UJI 13-305.

undisputed and all reasonable inferences therefrom are plain, consistent and uncontradictory.'" *Talbott,* 138 N.M. at 196, 118 P.3d at 201 (quoting *Harless v. Ewing,* 80 NM 149, 151, 452 P.2d 483, 485 (Ct.App. 1969)).

The Court concludes that the undisputed dates of the medical procedures establish a lack of causation as a matter of law as to those members of the UTC whose medical procedures occurred before July 21, 2007. Even if QHR had appropriately made a formal written request of the MEC to initiate an investigation and kept the Hospital board and its executive committee appropriately informed, any injuries resulting from the medical procedures performed before July 21, 2007 would have occurred anyway. Those members of the UTC had already undergone their medical procedures before these breaches of duty occurred. Therefore, QHR's breaches of duty in how it reacted to the July 21, 2007 Letter are not reasonably connected as significant links to the injuries resulting from the procedures performed before that date. QHR necessarily could not have caused any injuries or any consequent damages suffered by members of the UTC whose medical procedures occurred before July 21, 2007.[14]

D.    The Non-PDA Procedures Performed after July 21, 2007 and Dr. Frank Bryant

QHR asserts that even if the MEC had conducted an investigation, its review would have been limited to whether PDA was "experimental surgery." Consequently, QHR requests summary judgment with respect to all members of the UTC who underwent procedures other than PDA. QHR's statement of undisputed facts includes a statement that it is uncertain how long it would have taken the MEC to initiate an investigation, and that had the medical staff or Hospital board stopped experimental surgery, it would not have affected non-PDA procedures.

_____

[14]For similar reasons, QHR's breach of duty in granting Dr. Schlicht temporary privileges, as a matter of law, could not be the cause of any injuries or consequent damage because Dr. Schlicht did not perform any procedures on any member of the UTC under his temporary privileges.

-11-

*See* Motion, ¶¶ 5 and 10. The UTC correctly point out that QHR has failed to properly support these factual assertions, and that such facts are subject to proof at the trial on causation.

The Court concludes that the facts established for purposes of the Motion are insufficient to grant summary judgment with respect to members of the UTC who underwent medical procedures other than PDA after July 21, 2007. The time frame, content, and results of the MEC's focused review are subject to genuine dispute and to proof at the causation trial. Evidence of whether the MEC would have even conducted a focused review, how a focused review is generally conducted, and what the MEC would have done had it conducted a focused review, has yet to be presented. Such evidence may be relevant to causation, even as to procedures other than PDA that Dr. Schlicht and Dr. Bryant performed together or separately. Both Dr. Bryant and Dr. Schlicht participated in performing the PDA procedure. *See* Memorandum Opinion, p. 36 (finding that "[t]he two physicians [Dr. Schlicht and Dr. Bryant] together performed minimally invasive spine surgeries, including the PDA procedure, on patients of the Hospital."). It is possible that after completing its investigation, the MEC would have revoked the privileges of both Dr. Schlicht and Dr. Bryant to perform any medical procedures at the Hospital, PDA or not.

Based on the record before the Court and the arguments of the parties, the Court determines that summary judgment on claims of members of the UTC, based on medical procedures other than PDA performed at the Hospital by Dr. Schlicht, Dr. Bryant, or both of them after July 31, 2007, should be denied.

CONCLUSION

QHR's breaches of duty in reacting to the July 21, 2007 Letter could not, as a matter of law, have caused any injury to members of the UTC whose medical procedures were performed

-12-

before that date.  Summary judgment will, therefore, be granted in favor of QHR and against the following members of the UTC who underwent their medical procedures at the Hospital before July 21, 2007:  Edna Chavez, Maria Coyazo, James Cross, James Cross, Marjorie Curtis, Dale Fox, Darrell Gilmore, Melissa Mackechnie, John O'Byrne, Susan Schwarzenegger, David Warden, Ronald Whiteley, and Judy Ferguson.  The Court will also enter summary judgment in favor of QHR against the plaintiffs who are spouses of the above named plaintiffs against whom summary judgment is granted.  Summary judgment will be granted in favor of QHR and against Barbara Olson only with respect to her claim based on the medical procedure she underwent on July 11, 2007.  Summary judgment on the claims of Barbara Olson otherwise will be denied.

Fact issues relevant to causation concerning what would have happened had QHR requested the MEC to initiate an investigation after learning of the experimental surgery assertion in the July 21, 2007 Letter preclude summary judgment with respect to those members of the UTC who underwent medical procedures other than PDA after July 21, 2007.

The Court will enter a separate order and separate judgments consistent with this Memorandum Opinion.

_Robert H. Jacobvitz_
_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  June 30, 2015

COPY via CM/ECF to all counsel of record

-13-