**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:   OTERO COUNTY HOSPITAL                Case No. 11-11-13686 JL
         ASSOCIATION, INC.,

         Debtor.

UNITED TORT CLAIMANTS, as
individuals,

         Plaintiffs,

                                              Master Docket,
                                              Misc. Proceeding No. 13-00007
                                              Adversary Nos:

         v.                                   12-1204j through 12-1207j,
                                              12-1209j, 12-1210j, 12-1212 through
                                              12-1215j, 12-1221j; 12-1235j, 12-1238j
                                              through 12-1241j, 12-1243j;
                                              12-1244j, 12-1246j; 12-1248j,
                                              12-1249j, 12-1251j through 12-1261j,
                                              12-1271j, 12-1276j and 12-1278j

QUORUM HEALTH RESOURCES, LLC,

         Defendant.


**MEMORANDUM OPINION (Single Judgment Issue)**

The Court tried these related adversary proceedings in phases. The first two phases tried

issues common to all of the related adversary proceedings. In Phase I, the Court determined the

duty and breach elements of the United Tort Claimants' negligence claims against Quorum

Health Resources, LLC ("QHR"). In Phase II, the Court determined causation and allocation of

fault. In Phase III, the Court will adjudicate damages for the individual members of the United

Tort Claimants ("UTC"). Recently, the Court held trials in four individual adversary

proceedings to adjudicate damages (the "Damages Trials").[1]  The Court has not yet issued its decision in the Damages Trials.  The parties intend to use the results of the Damages Trials as "test" cases.  After the Court issues its decision(s) in the Damages Trials, the parties will attend a mediation conference in an effort to resolve all remaining claims of all remaining UTC members.

Following Phase II, QHR requested the Court to enter a single judgment following the conclusion of *all* damages trials for all UTC members, instead of individual judgments for each member of the UTC after the conclusion of each individual damages trial.  *See* Memorandum Brief Regarding Entry of a Single Judgment at the Conclusion of All Damages Trials Rather than Individual Judgments – Docket No. 610.  The UTC and QHR have filed briefs on this issue, which the Court has termed the "Single Judgment Issue."  *See* Docket Nos. 631, 666, and 679.

After considering the parties' arguments, the Court has determined that the best approach is to issue a memorandum opinion in the Damages Trials that fixes the damages amounts for each of the four members of the UTC in the Damages Trials, without entering separate final judgments in the individual adversary proceedings prior to a January 2018 scheduled mediation.  If the parties do not reach a settlement, the Court would then issue final judgments in each of the four adversary proceedings in which the Damages Trials have been held.   This approach will maximize the possibility of settlement without forcing the parties to decide whether to file an appeal due to the entry of a final judgment.

DISCUSSION

QHR requests the Court to wait to enter one, single, aggregate judgment following the conclusion of all damages trials for three reasons.  First, QHR argues that the Court's prior ruling

---

[1] Those adversary proceedings are:  Patricia E. Rue and Gary T. Rue v. QHR – Adversary Proceeding No. 12-1257 J; Ivan S. Jackson v. QHR – Adversary Proceeding No. 12-1240 J;  Desiree A. Smith and Henry Smith v. QHR – Adversary No. 12-1255 J; and Kelly Robbins and Herbert Robbins v. QHR – Adversary No. 12-1278 J.   Adversary Proceeding No. 12-1278 J has other named plaintiffs whose damages trials have not yet been heard.

regarding QHR's potential entitlement to offset the amounts previously paid by or on behalf of QHR against the judgment entered against it in these adversary proceedings complicates entry of individual judgments. Entry of a single judgment would avoid these complications. Second, QHR asserts that entry of a single judgment will avoid multiple, piece-meal appeals in these related adversary proceedings. Third, QHR argues that the entry of a single judgment is consistent with the UTC's internal agreement for the distribution of proceeds from this litigation to the individual members of the UTC.

The UTC counter that delaying the entry of judgment until all adversary proceedings have been adjudicated will give QHR less incentive to settle the remaining claims through mediation. The UTC argue further that they need to execute on the individual judgments as soon as possible to prevent additional erosion by QHR's continued litigation costs of the funds otherwise available to pay the UTC's judgments under QHR's insurance policies. The UTC argue that their internal agreement for distribution of judgment proceeds among UTC members is irrelevant to the Single Judgment Issue. The Damages Trials fully adjudicated the individual claims of four UTC members; consequently, the UTC assert that it is appropriate to enter individual final judgments in each of the four adversary proceedings.

*The Offset Issue*

QHR previously raised the question of whether it is entitled to an offset for amounts QHR, or another entity on behalf of QHR, has already paid for the benefit of the UTC against any judgment that may ultimately be entered against QHR in these related adversary proceedings. The Court found that QHR is entitled to a credit, but only for the amounts previously paid by or on behalf of QHR used to satisfy a self-insured retention under the Lexington insurance polic(ies) that can only be satisfied by payments that compensate the injured party for the same damages as those arising from UTC's negligence claims against

3

QHR.[2]  Otherwise, QHR is not entitled to a credit or offset.  Thus the amount of the credit or offset, if any, can only be determined by interpreting the Lexington insurance polic(ies).  Interpretation of the Lexington insurance polic(ies) is not an issue before this Court.  Rather, litigation concerning insurance coverage issues involving Lexington remains pending in state court in Tennessee.  Lexington is not a party to these adversary proceedings.

QHR reasons that until the amount of the offset is determined, it would be impossible for the Court to enter separate, individual judgments, or for the UTC to execute on an individual judgment, because allocation of the offset amount (if any) to a particular judgment would be unknown.   The Court agrees QHR's potential offset amount ultimately will affect the UTC's execution and collection of the judgment(s).  However, collection and enforcement are not dispositive as to whether to issue final, individual judgments.

In addition, the UTC's internal agreement regarding distribution of judgment proceeds makes no difference to the offset issue or whether entry of a single, aggregate judgment should be entered rather than individual judgments.  Resolution of the insurance coverage litigation, which is not before this Court, will determine how the offset ultimately affects the amount QHR must pay from the insurance proceeds to satisfy any judgment the Court enters in favor of the UTC as a result of the Damages Trials.  But post-judgment collection issues are separate from whether final judgment(s) should be issued following the conclusion of the Damages Trials.  The outstanding issues surrounding QHR's potential offset amount do not preclude the entry of individual judgments.  The Court declines to enter a single judgment after the resolution of all

---

[2] Specifically, the Court limited QHR's right to an offset to the extent, if at all, that
      (i) the $5.05 million payment is applied to satisfy a SIR [self-insured retention] to trigger coverage; and
      (ii) the SIR can only be satisfied under the insurance polic(ies) by payments that compensate the injured party for the same damages (regardless of the theory of recovery) as those arising from negligence claims at issue in these adversary proceedings.

      *See* Memorandum Opinion – Docket No. 620, p. 13.

4

related adversary proceedings on grounds that entering a single judgment will avoid complications caused by the unknown potential offset amount.

*Rules 54 and 58 and the Entry of Final Judgments*

Federal Rule of Civil Procedure 54(b), made applicable to adversary proceedings by Fed. R. Bankr. P. 7054, governs judgments on multiple claims or involving multiple parties.   It provides:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Rule 54(a) defines "judgment" to include "a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7054.  A decision that adjudicates fewer than all of the claims, or adjudicates the claims of fewer than all of the parties to the action, does not constitute a final, appealable judgment, unless the Court "expressly determines that there is no just reason for delay." *Id.  See also,* 10 Charles A. Wright, et al, *Federal Practice and Procedure:  Civil* § 2654 at 33 (2014) (explaining that, "[a]bsent a certification under Rule 54(b) any order in a multiple party or multiple-claim action, even if it appears to adjudicate a separate portion of the controversy, is interlocutory.").  "The purpose of Rule 54(b) 'is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available.'" *Oklahoma Turnpike Authority v. Bruner,* 259 F.3d

1236, 1241 (10th Cir. 2001) (quoting 10 Charles A. Wright, et al., *Federal Practice and Procedure: Civil 2d* § 2654 at 33 (1982)).

However, if a judgment fully adjudicates all of the claims of all of the parties to the action, the judgment constitutes a final, appealable judgment under Rule 54(a), and Rule 54(b) does not apply. *See Gelboim v. Bank of America Corp.,* 135 S.Ct. 897, 906, 190 L.Ed.2d 789 (2015) ("Rule 54(b) addresses orders finally adjudicating fewer than all claims presented in a civil action complaint. It 'does not apply to a single claim action nor to a multiple claims action in which all of the claims have been finally decided.'") (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)).

The UTC point out that the Damages Trials fully adjudicated the claims of four individual UTC members. Court agrees with the UTC that Rule 54(b) does not apply to the judgment(s) to be entered following the Damages Trials. Even though the Court has tried the issues common to all members of the UTC at the same time, and even though the remaining related adversary proceedings remain pending following the Damages Trials, the judgment(s) following the Damages Trials will fully adjudicate all of the claims of all of the parties to those separate adversary proceedings.

Federal Rule of Civil Procedure 58, made applicable to adversary proceedings by Fed. R. Bankr. P. 7058, requires a judgment to be set forth in a separate document. Fed. R. Civ. P. 58 (a) ("Every judgment and amended judgment must be set out in a separate document"). If a memorandum opinion is entered without the entry of a separate judgment, the memorandum opinion has not complied with the requirements of Rule 58 and does not constitute a final, appealable judgment. *See In re Montgomery Ward Holding Corp.,* 217 F.R.D. 326 (D. Del. 2003) (concluding that memorandum order entered in a bankruptcy case failed to comply with Rule 58's requirement for a judgment to be set forth in a separate document; consequently entry

6

of the memorandum opinion did not commence the appeal period); 10 Charles A. Wright, et al, *Federal Practice and Procedure: Civil* § 2651 at 12-13 (2014) (observing that "Rule 58 was amended to require that every judgment be set out in a separate document, and it no longer is possible for a decision to constitute a judgment unless that requirement is satisfied.").

Ordinarily, Rule 58's requirement for entry of a judgment by a separate document should not be used to delay the entry of a final judgment. *See* 11 Charles A. Wright, *Federal Practice and Procedure: Civil* § 2781 at 17 (2012) (Rule 58 "always has contemplated prompt entry of judgment and it is designed to encourage all reasonable speed in formulating and entering the judgment when the case has been decided.") (internal quotation marks and citation omitted).[3] But the circumstances of this phased litigation justify a short delay in the Court's entry of a separate, final judgment. If the Court were to enter its memorandum opinion and delay the entry of separate judgments that comply with Rule 58 until after the mediation, the parties would not be forced to decide whether to file an appeal or divert time, attention and resources, at the same time they prepare for mediation. The Court's memorandum opinion following the Damages Trials will explain the Court's reasoning and quantify the damages for each of the four UTC members whose claims were adjudicated in the Damages Trials. The parties will, therefore, have the information they need for the mediation, without the distraction and additional work and expense caused by the need to file an appeal.

The UTC are concerned that they need to be able to execute on any final judgment immediately, that further delay will allow QHR to continue to erode the insurance policies, and that if there is no fear of execution, QHR will be less willing to negotiate a settlement. This Court disagrees that these concerns require immediate entry of a separate judgment. If QHR

---

[3] *Cf. Ray Haluch Gravel Co. v. Central Pension Fund of the Int'l Union of Operating Engineers and Participating Employers,* 134 S.Ct. 773, 781-82, 187 L.Ed.2d 669 (2014) (noting that the case was "not a case in which the parties attempted to invoke Rule 58(e) to delay the time to appeal.").

were forced to file an immediate appeal, the associated costs would be surely greater than if judgment were delayed until after the parties go to mediation; a successful mediation will eliminate the need to appeal. The Court will enter separate judgments per Rule 58 shortly after the scheduled mediation, but no later than March 1, 2018.[4] Knowing that final judgments will be entered shortly after the mediation will provide sufficient incentive to the parties to settle.

The Court recognizes that the delay in the entry of a separate judgment may not prevent a party from filing an appeal early. *See In re Taumoepeau,* 523 F.3d 1213, 1218 n. 5 (10th Cir. 2008) (explaining that "'where there is no question about the finality of the court's decision, the absence of a Rule 58 judgment will not *prohibit* appellate review' when the appellant pursues an appeal *before* a separate document recording a judgment is entered.") (quoting *Aviles v. Lutz,* 887 F.2d 1046, 1047 n.1 (10th Cir. 1989) (emphasis added in *Taumoepeau*). Rather, application of the separate document rule "'mechanically'" is appropriate "when doing so is required to preserve a party's opportunity to appeal." *Id.* at 1217 (quoting *Bankers Trust Co. v. Mallis,* 434 U.S. 381, 386, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978)). Even so, given the posture of these adversary proceedings and the circumstances surrounding the litigation, the Court believes delay of the entry of a final judgment until after the parties complete the mediation is appropriate. In addition, the parties did not express opposition to the Court's suggested approach at a hearing held October 2, 2017.

---

[4] Unless the court orders otherwise, Rule 58(b)(1) requires the clerk to promptly prepare, sign, and enter the judgment without awaiting the court's direction if the court awards only costs or a sum certain. *See* Fed. R. Civ. P. 58(b)(1)(B) ("Subject to Rule 54(b) and unless the court orders otherwise, the clerk must, without waiting the court's direction, promptly prepare, sign, and enter the judgment when: . . . the court awards only costs or a sum certain."). The judgments following the Damages Trials, which will fix a sum certain amount of damages, would fit within this category of judgments requiring the clerk's prompt entry without awaiting the court's direction, unless the Court ordered otherwise. The Court will order otherwise.

8

## CONCLUSION

Based on the foregoing, the Court concludes that it is not appropriate to enter a single judgment following the conclusion of all of the UTC's related adversary proceedings. The offset issues do not require the entry of a single judgment; insurance coverage litigation pending elsewhere ultimately will resolve that issue.

Historic federal policy discourages piecemeal appeals. *Mackey,* 351 U.S. at 438. That policy "promotes judicial efficiency, expedites the ultimate termination of an action and relieves appellate courts of the need to repeatedly familiarize themselves with the facts of a case." *Oklahoma Turnpike,* 259 F.3d at 1241. Rule 54(b) is designed to promote that policy. *Id.* However, because the Damages Trials fully adjudicated all of the claims of all of the parties to those individual adversary proceedings, Rule 54(b) does not apply; a decision on the Damages Trials therefore must result in the entry of a final, appealable judgment. To accommodate the procedural posture of these related adversary proceedings, promote efficiency and economy, and provide the best prospects for a successful mediation, which could eliminate the need for an appeal, the Court will enter its memorandum opinion but delay the entry of separate judgments until after the parties conduct their mediation, but no later than March 1, 2017. This approach will provide finality without unduly hampering the parties' efforts to settle the remaining claims following the Court's decision on the Damages Trials.

The Court will enter a separate order consistent with this Memorandum Opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: November 17, 2017

COPY via CM/ECF to all counsel of record