UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: OTERO COUNTY HOSPITAL ASSOCIATION, INC.,

Case No. 11-11-13686 JL

Debtor.

UNITED TORT CLAIMANTS, as individuals,

    Plaintiffs,

v.

QUORUM HEALTH RESOURCES, LLC,

    Defendant.

Consolidated Misc. Adv. No. 13-00007
Adversary Nos:

12-1204j through 12-1207j,
12-1209j, 12-1210, 12-1212
through 12-1215j, 12-1221j,
12-1235j, 12-1238j through
12-1241j, 12-1243j, 12-1244j,
12-1246j, 12-1248j, 12-1249j,
12-1261j, 12-1271j, 12-1276j and
12-1278j.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Quorum Health Resources, LLC's Motion to Reconsider the Court's May 15, 2017 Memorandum Opinion Concerning Offsets, to Quantify and Apply the Amount of the Offsets Against the Judgments, and to Stay Enforcement of the Judgments ("Motion to Reconsider Offset Opinion"). *See* Docket No. 811. The United Tort Claimants ("UTC") oppose the Motion to Reconsider Offset Opinion. *See* Opposition to Quorum Health Resources, LLC's Motion to Reconsider the Court's May 15, 2017 Memorandum Opinion Concerning Offsets to Quantify and Apply the Amount of the Offsets Against the Judgments and to Stay Enforcement of the Judgments ("Opposition") – Docket No. 840. As explained below, the Court will reconsider its previous opinion to the extent necessary to enter

final judgments following the damages trials for each member of the UTC, but declines to quantify and apply any credit against any damages award. The Court will not stay enforcement of any final judgments at this time.

## DISCUSSION

The Court previously entered a Memorandum Opinion (the "Offset Opinion") on the issue of whether Quorum Health Resources, LLC ("QHR") is entitled to an offset of the amounts QHR or its insurer(s) paid on behalf of QHR in partial settlement against any damages the Court may ultimately award to the UTC on their negligence claims against QHR. *See* Docket No. 620. The Court determined that QHR may be entitled to a credit, but that quantification of the amount of such credit would require interpretation of insurance policies issued by Lexington Insurance Company ("Lexington"), an issue not before the Court. *See* Offset Opinion – p. 17. The Court held that QHR's entitlement to an offset is limited by the following:

1) The payment must be applied to satisfy a self-insured retention ("SIR"); and

2) The SIR can only be satisfied by payments that compensate the injured party for the same damages (regardless of the theory of recovery) as those arising from the UTC's negligence claims against QHR asserted in these adversary proceedings.

Offset Opinion, pp. 13 and 15. Insurance coverage issues involving Lexington are the subject of ongoing litigation in state court in Tennessee in an action entitled *Lexington Insurance Company v. Quorum Health Resources, LLC, et al.*, Chancery Court for Williamson County, Tennessee, Case No. 43752 (the "Coverage Litigation").

Since the Court issued its Offset Opinion, the Tennessee court issued an order in the Coverage Litigation determining that Nautilus Insurance Company's $6 Million payment and QHR's $5.05 million payment together satisfied the self-insured retention applicable to the two policy periods covered by Lexington insurance policies at issue in the Coverage Litigation (the

"Lexington Insurance Policies" or the "Policies"). *See* Order Granting Motion to Revise Interlocutory Order ("Tennessee Order"), Exhibit A to Motion to Reconsider Offset Opinion. Based on the Tennessee Order, QHR requests the Court to reconsider its Offset Opinion and quantify the offset amount.

      A. *Reconsideration Standards*

The Court has yet to issue a final judgment awarding damages on any of the UTC's negligence claims asserted against QHR in these related adversary proceedings. The rulings made in the Offset Memorandum are not final because they did not end the action as to either QHR or the UTC and did not fully adjudicate any of the UTC's claims. *See* Fed. R. Civ. P. 54(b); *see also In re Durability, Inc.*, 893 F.2d 264, 266 (10th Cir. 1990 (per curiam) (a bankruptcy court's order that does not end an adversary proceeding on the merits is not a final order). Further, the Court did not enter a judgment or order on those rulings. Rule 54(b) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7054, applies to the Court revising non-final judgments, orders and other decisions.[1]

Under Rule 54(b), the Court may revise its decision "at any time before the entry of a final judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007) (stating that "district courts generally remain free to reconsider their earlier interlocutory orders.") (citations omitted). Rule 54(b) does not curtail or provide the Court with any standards by which to exercise its broad discretion to reconsider its non-final judgments, orders, or other decisions. *See Anderson Living Trust v. WPX Energy Production, LLC*, 308 F.R.D. 410, 433 (D.N.M. 2015)

---

[1] "Rule(s)" in this Memorandum Opinion refers to the Federal Rules of Civil Procedure. "Bankruptcy Rule(s)" refers to the Federal Rules of Bankruptcy Procedure.

(observing that "[t]he Tenth Circuit has not cabined district court's discretion beyond what Rule 54(b) provides . . . . [A] district court can use whatever standard it wants to review a motion to reconsider an interlocutory order."). Although a court may, and often does, look to the standard used to review a motion made pursuant Rule 59(e) in deciding a Rule 54(b) motion, *Ankeney v. Zavaras*, 524 F.App'x 454, 458 (10th Cir. 2013) (unpublished), the Court is not bound by those standards when considering a Rule 54(b) motion. *Friedman v. Dollar Thrifty Automotive Group, Inc.*, 2015 WL 8479746, *2 (D. Colo. Dec. 10, 2015).

In ruling on the Motion to Reconsider Offset Opinion, this Court relies on its broad discretion under Rule 54(b) to correct a prior interlocutory decision.

B. *Issuance of Final Judgments on the UTC's Negligence Claims*

On January 30, 2018, the Court issued a Memorandum Opinion following the damages trials for four members of the UTC. *See* Docket No. 827. The Court determined that each UTC member in question was entitled to recover damages in the amounts set forth in the opinion. Judgments have not yet been entered. Having heard argument and considered the issue further, and in light of the Tennessee Order, the Court is convinced that it can and should issue final judgments without adjustment for any amounts paid by QHR, Nautilus Insurance Company ("Nautilus") or Ironshore Insurance Company ("Ironshore") in settlement.[2] The amount Lexington is obligated to pay members of the UTC to satisfy judgments this Court enters against QHR, and the effect of QHR's, Nautilus's and Ironshore's settlement payments on the amount Lexington is obligated to pay, necessarily involves Lexington and an interpretation of the Lexington Insurance Policies. It is an enforcement issue against a non-party to the adversary proceedings before this Court that should be determined in the Coverage Litigation.

---

[2] Nautilus, Ironshore and Lexington issued excess policies to QHR covering certain claims against QHR. QHR, Nautilus and Ironshore each paid monies in settlement with the UTC.

-4-

*The Settlement Agreement*

The UTC, QHR, Nautilus and others entered into a Settlement Agreement, which the Court approved by an order confirming Otero County Hospital Association, Inc.'s Third Amended Plan of Reorganization dated June 20, 2012.[3] As part of the Settlement Agreement, the UTC agreed to limit its enforcement of any judgment ultimately obtained against QHR from amounts available under existing insurance policies. The Settlement Agreement provides, in relevant part:

> the UTC will enforce any and all such judgments against the available insurance only, and not against the assets of QHR or its respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors.

Settlement Agreement, ¶ C.4. Thus, under the Settlement Agreement, UTC's enforcement of any judgments this Court enters against QHR is expressly limited to insurance policy proceeds. At this point, Lexington is the potential source of payment for any judgments this Court enters in favor of members of the UTC against QHR. To determine and quantify the extent to which payments by QHR, Nautilus, or others to the UTC under the Settlement Agreement affects Lexington's liability under the Policies to pay the judgments requires interpretation of the Lexington Insurance Policies. For example, it requires a determination of how much of the settlement payment amounts was required to satisfy the SIRs under the Policies, which of the Policies or policy years cover the claims that resulted in each of the judgments, and to what extent settlement payments that satisfied the SIR's reduce Lexington's payment obligations under the Policies.

---

[3] Ironshore later settled with the UTC.

-5-

Lexington would be an indispensable party to any judicial determination of these issues. *See* Fed. R. Bankr. P. 7019 and Fed. R. Civ. P. 19. But Lexington is not a party to the litigation before this Court. Further, it is not clear that this Court even has subject matter jurisdiction to determine the amount Lexington is obligated to pay under the Policies as a result of judgments this Court enters. *See* 28 U.S.C. § 1334. And even if the Court did have such jurisdiction, the issues relating to what extent Lexington is obligated to pay under the Polices as a result of judgments issued by this Court and the settlement payments by QHR, Nautilus, and Ironshore should be decided in the Coverage Litigation.

*The Tennessee Order*

The Tennessee Order entered January 2, 2018 in the Coverage Litigation provides, in relevant part:

> The combination of Nautilus Insurance Company's payment of $6 Million and QHR's payment of $5.05 Million to the UTC, taken together, satisfy the self-insured retentions applicable to the two policy periods covered by the two Lexington insurance policies that are the subject of this litigation. This ruling is based upon the unambiguous language of the partial Settlement Agreement entered into among the UTC, QHR and others, but not including Lexington, in the underlying tort litigation and based upon the definition of self-insured retention contained in the subject Lexington insurance policies.

Tennessee Order, ¶ 3.

Based on this language, QHR asserts that this Court can now quantify the amount of credit consistent with the Offset Opinion. This Court disagrees. The Tennessee Order determined that the $6.0 Million payment and the $5.05 Million payment "taken together" satisfied the applicable SIRs, but did not state whether the entire $11.05 million, or some lesser amount, was necessary to satisfy the SIRs. Nor did the Tennessee Order expressly determine whether the payments that satisfy the SIRs must be applied to claims against QHR covered by the Policies or

-6-

to what extent the payments reduce Lexington's obligations under the Policies to pay amounts resulting from judgments this Court enters.

*Ironshore Settlement*

As part of its Motion to Reconsider Offset Opinion, QHR also requests the Court to offset any judgment by the $2.1 million Ironshore previously paid in settlement to the UTC shortly before the trial of the liability phase of this litigation. The Court previously declined to address this issue in its Offset Opinion, reasoning that the terms of the settlement among the UTC, QHR and Ironshore are not before the Court. *See* Offset Opinion, p. 16. The same holds true now. In addition, whether Ironshore's payment ultimately affects the amount Lexington will be required pay to satisfy the judgments the UTC obtain against QHR, just like the prior payments by QHR and Nautilus, is an enforcement issue against a non-party to these proceedings that should be decided in the Coverage Litigation.

*Final Judgments*

A judgment is final once the Court "has rendered a decision that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1123 (10th 2003). *See also Harbert v. Healthcare Services Group, Inc.*, 391 F.3d 1140, 1145 (10th Cir. 2004) ("For a ruling to be final, 'it must end the litigation on the merits, and the judge must clearly declare his intention in this respect.'") (quoting *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co,* 498 U.S. 269, 273-74, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991) (internal quotations and citations omitted)). At a status conference held February 2, 2018, QHR suggested that the Court's Offset Opinion, absent quantification and application of the amount of credit, could prevent any judgment entered following the damages trials from becoming final. QHR directed the Court's attention to two Tenth Circuit cases, *Olcott* and

*Harbert.* In *Olcott,* the judgment at issue was a default judgment awarding damages as a discovery sanction. *Olcott*, 327 F.3d at 1119. In *Olcott*, because the court had reserved jurisdiction to later determine a set-off amount based on defendant's compliance with the court's discovery orders, the initial default judgment, which did not quantify the damage award following the set-off hearing, was not final. *Id.* at 1123. In *Harbert*, the court entered an order resolving liability in plaintiff's favor and establishing a formula for calculating damages. *Harbert*, 391 F.3d at 1144. The order awarded plaintiff back pay and front pay in specified amounts, but provided further that such amounts would be reduced by earnings from other employment and by projected earnings at her present rate, and directed the parties to "meet and confer" in an attempt to "determine the precise amounts" to be awarded in the judgment. *Id.* at 1145. If the parties could not reach an agreement, the judgment contemplated a further hearing. *Id.* at 1146. The Tenth Circuit concluded that the order was not final because the various damage components "were not sufficiently fixed," calculation of the total damage amount "could have proven complicated and disputed," and the order itself provided for any disputed issues to be set for further hearing. *Id.*

This Court is not persuaded that entry of judgments following the damages trials without first quantifying and applying a credit for the amounts previously paid by or on behalf of QHR renders the judgments fixing the total damages against QHR non-final. Because the UTC may only collect any judgment it obtains against QHR from amounts Lexington is obligated to pay under the Lexington Insurance Policies, Lexington is the entity that will ultimately be called upon to pay the judgments. The Tennessee Court in the Coverage Litigation will determine the amount of any judgments this Court enters that Lexington is obligated to pay under the Policies

taking into account amounts already paid by QHR, Nautilus and Ironshore. There is no further decision this Court needs to make for the Tennessee Court to make that determination.

The damages awarded in any judgment this Court may enter in favor of a member of the UTC and against QHR will fully and finally adjudicate that UTC member's claims against QHR and award damages in a sum certain. *See Albright v. UNUM Life Insurance Co. of America*, 59 F.3d 1089, 1092 (10th Cir. 1995) (observing that "the touchstone of a final order is a 'decision by the court that a party shall recover only a *sum certain.*'") (quoting Fed. R. Civ. P. 58) (emphasis in original). Further, it will fully adjudicate all claims and issues this Court needs to decide in the adversary proceeding in which the judgment is entered thereby ending the litigation on the merits and leaving nothing for this Court to do but execute the judgment.

*Stay of Enforcement*

QHR alternatively requests the Court to stay enforcement of any judgment if the Court does not quantify and apply a credit. The Court declines to stay enforcement of any judgment because it is unnecessary to do so.

CONCLUSION

Based on the foregoing, the Court has reconsidered its prior Offset Memorandum. The Court will issue final judgments for the full amount of the damages following the damages trials in the UTC's individual adversary proceedings without regard to the fact that the amount Lexington will ultimately be obligated to pay to satisfy a judgment will be determined in the Coverage Litigation and may be less than the amount awarded. Enforcement of the final judgments will not be stayed absent a stay pending appeal.

To the extent this Memorandum Opinion is inconsistent with the Offset Opinion, this Memorandum Opinion supersedes the Offset Opinion. To the extent this Memorandum Opinion

is consistent with the Offset Opinion, this Memorandum Opinion supplements the Offset Opinion. The Court will enter a separate order on the Motion to Reconsider Offset Opinion consistent with this Memorandum Opinion.

/s/ Robert H. Jacobvitz
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 8, 2018

COPY via CM/ECF to all counsel of record.