UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: OTERO COUNTY HOSPITAL ASSOCIATION, INC., | No. 11-13686-j11 |
| Debtor. | |

| | |
|---|---|
| UNITED TORT CLAIMANTS, as Individuals, | Misc. Adv. No. 13-00007-j |
| Plaintiffs, | Adversary Nos.:<br>12-1204j through 12-1216j;<br>12-1218j through1 2-1223j; |
| v. | 12-1235j, 12-1238j through<br>12-1249j; 12-1251j through |
| QUORUM HEALTH RESOURCES, LLC, | 12-1261j; 12-1271j, 12-1276j<br>and 12-1278j |
| Defendant. | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion for Determination of Attorney's Fees and Costs ("Motion" – Docket No. 975) and an Attorney Charging Lien (Docket No. 976) filed by Felicia C. Weingartner and Felicia C. Weingartner P.C. (together, "Weingartner Parties"). The Motion concerns a dispute between the Weingartner Parties and Tim Chelpaty over entitlement to attorney's fees collected as a result of the settlement of the related adversary proceedings captioned under Miscellaneous Adversary Proceeding No. 13-00007 (the "Fee Sharing Dispute"). As explained below, even though the Court may have jurisdiction over the Fee Sharing Dispute under 11 U.S.C. § 105 and the Court's inherent authority to control the practice of attorneys who appear before the Court, the Court will permissively abstain from adjudicating the Motion in the interest of comity and respect for the state court.

BACKGROUND AND PROCEDURAL HISTORY[1]

During the first half of 2011, the United Tort Claimants, as individuals (the "UTC") commenced individual actions against Dr. Christian Schlicht, Dr. Frank Bryant, Otero County Hospital Association, Inc., d/b/a Gerald Champion Regional Medical Center (the "Hospital"), Quorum Health Resources, LLC ("QHR"), and other defendants in state court alleging medical malpractice and other acts of negligence relating to a surgical procedure members of the UTC underwent at the Hospital.

Largely due to the lawsuits filed against the Hospital, the Hospital filed a voluntary petition under chapter 11 of the Bankruptcy Code on August 16, 2011. *See* Case No. 11-13686-j11 ("Bankruptcy Case") – Docket No. 1. The UTC commenced the adversary proceedings referenced in the caption of this miscellaneous proceeding by removing forty-seven state court lawsuits to this Court. The Hospital, the UTC, QHR, one of its insurers, and other parties reached a partial settlement as part of the Bankruptcy Case. The terms of the settlement were incorporated into the Hospital's confirmed chapter 11 plan of reorganization. After the partial settlement, QHR remained the sole remaining defendant in the adversary proceedings. The Court entered a Final Decree in the Bankruptcy Case on November 12, 2015, and the Bankruptcy Case was closed on the same date. *See* Bankruptcy Case – Docket No. 1222.

The Court created a master docket, assigned Miscellaneous Adversary Proceeding No. 13-00007, for the adversary proceedings. The Weingartner Parties represented certain members of the UTC in the adversary proceedings, including the following: James and Cynthia Fender;

---

[1] At the preliminary hearing on the Motion, the parties consented to this Court taking judicial notice of the documents filed in this adversary proceeding, Otero County Hospital Association, Inc.'s bankruptcy case (Case No. 11-13686-j11), and the pending lawsuit filed by Tim Chelpaty against the Weingartner Parties in the Third Judicial District Court as Case No. D-307-CV-2019-00121. Copies of the documents filed in the state court case were filed of record in this Miscellaneous Adversary Proceeding No. 13-00007 under Docket No. 981.

Judy Ann and Otis Ferguson; Linda Hoefler and Victor Wilkerson; and Joel and Vivian Crossno ("Plaintiffs").

Ultimately, after several years of phased litigation in which the Court entered final judgments in favor of four members of the UTC, the UTC and QHR reached a settlement that resolved all remaining claims in the adversary proceedings. This Court approved the parties' Settlement Agreement on September 21, 2018. *See* Order Approving Settlement Agreement – Docket No. 973. The Order Approving Settlement Agreement contains the following jurisdictional provision:

> The Court has jurisdiction over all parties bound by the Settlement Agreement (Doc. 971) pursuant to the Order Confirming the Third Amended Plan of Reorganization (Case No. 11-13686-j11 – Doc. 712, paragraph 56); continuing jurisdiction over matter arising from this proceeding and ancillary jurisdiction for matters related to the Third Amended Plan of Reorganization (Case No. 11-13686-j11 – Doc. 591); and jurisdiction over all members of the United Tort Claimants, as defined in paragraph 1.b. of the Settlement Agreement ("UTC") by their signed consent for the terms of the Settlement Agreement.

Order Approving Settlement Agreement, ¶ B.

The Settlement Agreement was filed under seal and remains confidential. *See* Order Granting Defendant's Motion to File under Seal ("Sealing Order") – Docket No. 968. The Sealing Order provides: "the Settlement Agreement shall remain confidential and is hereby sealed." *Id.*

In January of 2019, Tim Chelpaty filed a Complaint for Breach of Contract, Conversion, and Violations of the Uniform Partnership Act ("Complaint") in the Third Judicial District Court, as Cause No. D-307-CV-2019-00121 (the "State Court Action"). The Complaint asserts that Mr. Chelpaty is entitled under an agreement with the Weingartner Parties to a 1/3 share of the fees earned from the recovery on Plaintiffs' claims against QHR. The Weingartner Parties sought to dismiss the State Court Action for lack of jurisdiction, but the state court determined that it had subject matter jurisdiction over the claims asserted in the State Court Action and denied the

-3-

Case 13-00007-j    Doc 983    Filed 03/10/20    Entered 03/10/20 14:49:49 Page 3 of 14

motion. *See* Docket No. 977 – Exhibit A. Mr. Chelpaty filed a Motion to Compel in the State Court Action, seeking an order compelling the Weingartner Parties to provide responses to pending discovery requests. *See* Docket No. 981-2.

The Weingartner Parties filed the Motion on October 15, 2019. *See* Docket No. 975. The Motion requests the following relief: 1) a determination that the Weingartner Parties are entitled to the disputed attorney's fees collected in Plaintiffs' cases; 2) a determination that Mr. Chelpaty is not entitled to payment of any fees from the amounts paid to Plaintiffs under the Settlement Agreement; 3) disgorgement of fees previously paid to Mr. Chelpaty from earlier settlements with other defendants; 4) a determination that Mr. Chelpaty is not entitled to payment of costs not recoverable from Plaintiffs, or which are offset by fees previously paid to Mr. Chelpaty; 5) an order authorizing Weingartner to deposit into this Court's registry fees representing a 1/3 share of the attorneys' fees relating to Plaintiffs' claims plus $15,000 representing disputed case costs; 6) a protective order for documents pertaining to the confidential settlements approved by this Court; and 7) an order requiring Mr. Chelpaty to obtain an order from this Court before he is permitted to access confidential documents.

Mr. Chelpaty opposes the Motion, arguing that the Fee Sharing Dispute is not a core matter and that the Motion is an improper attempt to remove the State Court Action to this Court. *See* Docket No. 977. The Weingartner Parties filed a reply. *See* Docket No. 978. The Weingartner Parties also filed an Attorney Charging Lien. *See* Docket No. 976. The Attorney Charging Lien asserts a claim for attorneys' fees collected with respect to the Plaintiffs as a result of the Settlement Agreement. *Id.* The parties agreed that they did not need to present any additional evidence to the Court regarding jurisdiction.

-4-

Case 13-00007-j    Doc 983    Filed 03/10/20    Entered 03/10/20 14:49:49 Page 4 of 14

DISCUSSION

Bankruptcy courts are courts of limited jurisdiction. *See Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517 (10th Cir. 1990) ("Bankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress."); *Connolly v. City of Houston (In re Western Integrated Networks, LLC)*, 329 B.R. 334, 340 (Bankr. D. Colo. 2005) ("[A] bankruptcy court cannot exercise jurisdiction over a proceeding when the proceeding falls outside the jurisdictional boundaries established by statute."). The jurisdictional grant conferred on bankruptcy courts by 28 U.S.C § 1334 covers "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).[2] Proceedings "arising under title 11, or arising in a case under title 11" are core proceedings. 28 U.S.C. § 157(b)(1). *See also Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (10th Cir. BAP 1997) ("The term 'core proceeding,' which, under section 157(b)(1), includes maters arising under and arising in bankruptcy cases, is defined in 28 U.S.C. § 157(b)(2).").[3] Core proceedings involve rights created by bankruptcy law, or proceedings that would arise only within a bankruptcy case. *Gardner*, 913 F.2d at 1518. Proceedings that fall within the Court's "related to" jurisdiction are non-core proceedings. *Midgard*, 204 B.R. at 771. Non-core, related proceedings primarily "encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for the bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others[.]" *In re Zale Corp.,* 62 F.3d 746, 752 (5th Cir. 1995) (quoting *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994)). *See also Gardner*, 913 F.2d at 1518 ("Related proceedings

---

[2] Under 28 U.S.C. § 157(a), the "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).
[3] *See also Stern v. Marshall*, 564 U.S. 462, 476 (2011) ("[C]ore proceedings are those that arise in a bankruptcy case or under Title 11.").

are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court."). A proceeding is "related to" a case under title 11 if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Gardner*, 913 F.2d at 1518 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

On the surface, this proceeding does not seem to fall within the Court's limited jurisdiction because it concerns a fee dispute between third parties over fees from a settlement under which the settlement monies have been disbursed. Resolution of the Fee Sharing Dispute will have no effect on the Hospital's bankruptcy or the bankruptcy estate since the bankruptcy case was closed long ago. *Cf. Scarborough v. Angel Fire Resort Operations, LLC (In re Angel Fire Corp.)*, No. 12-CV-01256-MCA-WPL, 2013 WL 1856350, at *16 (D.N.M. May 2, 2013) ("Bankruptcy courts are of limited jurisdiction, and adjudication by such a court over matters only tangentially connected to a long-expired bankruptcy case would appear to exceed the established jurisdictional boundaries . . . ."). Nor will resolution of the Fee Sharing Dispute affect any of the parties to the adversary proceedings.

On the other hand, it is well-settled that the bankruptcy court has inherent authority to regulate the practice of attorneys who appear before it. *See Ginsberg v. Evergreen Sec., Ltd. (In re Evergreen Sec., Ltd.)*, 570 F.3d 1257, 1263 (11th Cir. 2009) ("Federal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients."); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996) ("There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court."); *United States Trustee v. Tank (In re Stacy)*, 193 B.R. 32, 38 (Bankr. D. Or. 1996) ("Federal courts, including bankruptcy courts, have

inherent authority to regulate practice in cases pending before them."); *cf. Harmon Family Trust v. Thomas (In re Thomas)*, 348 Fed. App'x 413, 417 (10th Cir. 2009) (finding that the bankruptcy court had jurisdiction under its inherent authority to impose sanctions against debtor appearing before it). This power is consistent with 11 U.S.C. § 105(a) which authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and further permits the court to "tak[e] any action or mak[e] any determination necessary or appropriate . . . to prevent an abuse of process." 11 U.S.C. § 105(a). *See also In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994) (Section 105 is "intended to imbue the bankruptcy courts with the inherent power . . . . to maintain order and confine improper behavior in its own proceedings . . . ."); *In re Timberon Water and Sanitation Dist.*, No. 9-07-12142 ML, 2009 WL 367685, at *1 (Bankr. D.N.M. Feb. 2, 2009) ("A bankruptcy court has inherent authority under 11 U.S.C. § 105 'to maintain order and confine improper behavior in its own proceedings.'") (quoting *Courtesy Inns*, 40 F.3d at 1089); *Thornburg v. Lynch (In re Thornburg)*, 277 B.R. 719, 723 (Bankr. E.D. Tex. 2002) ("The Bankruptcy Court has jurisdiction to . . . prevent abuse of process under § 105(a)."); *cf. In re Brooks-Hamilton*, 400 B.R. 238, 246 (9th Cir. BAP 2009) ("Bankruptcy courts also possess the inherent authority to suspend or disbar attorneys, as implicitly recognized by Congress in enacting § 105(a).").

The Weingartner Parties assert that Mr. Chelpaty is not entitled to fees because he has not satisfied the requirements Rule 16-105(C) and Rule 16-105(H) of the New Mexico Rules of Professional Conduct. This Court has the inherent authority to enforce compliance with these rules by attorneys appearing before the Court. *Cf. Dignity Health v. Seare (In re Seare)*, 493 B.R. 158 (Bankr. D. Nev. 2013) (applying the Nevada Rules of Professional Conduct in sanctioning

debtor's counsel for misconduct in his representation of debtor). And the Court's authority to prevent an abuse of process under 11 U.S.C. § 105 would place such a dispute within the Court's core jurisdiction because it invokes a section of title 11. Yet, Mr. Chelpaty never entered an appearance or signed any motions, briefs, or other papers in the adversary proceedings, and never appeared before the Court at any hearing. His only connection to the Hospital's bankruptcy case was the filing of proofs of claim with the claims and noticing agent appointed in the bankruptcy case. Ultimately, the Court need not decide whether the filing of the proofs of claim is a sufficient basis for the Court to exercise core jurisdiction over this dispute because, even if the matter is core, the Court may permissively abstain under 28 U.S.C. § 1334(c)(1). *See Telluride Asset Resolution, LLC v. Telluride Global Dev., LLC (In re Telluride Income Growth, LP),* 364 B.R. 390, 398 (10th Cir. BAP 2007) ("Section 1334(c)(1) permits abstention from core matters and non-core matters . . . ."); *Beneficial Nat'l Bank USA v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc*.), 220 B.R. 932, 952 (Bankr. E.D. Tenn.1998) ("[P]ermissive abstention applies to both non-core related and core proceedings.") (*citing Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir.1996)).

*Permissive Abstention*

Permissive abstention may be warranted "in the interest of justice, or in the interest of comity with State courts or respect for State law," 28 U.S.C. § 1334(c)(1), and can be raised by the bankruptcy court *sua sponte*. *See Scoular Co. v. Dalhart Consumers Fuel Ass'n, Inc. (In re Podzemny)*, Adv. No. 10-1010 J, 2010 WL 1795269, at *6 (Bankr. D.N.M. May 3, 2010); *Bricker v. Martin*, 348 B.R. 28, 33 (W.D. Pa. 2006), *aff'd*, 265 F. App'x 141 (3d Cir. 2008) (noting that, unlike the mandatory abstention statute, the permissive abstention statute does not require a motion, which "by implication [means that] a bankruptcy court may permissively abstain *sua sponte*."). Factors relevant to permissive abstention include:

> (1) the effect that abstention would have on the efficient administration of bankruptcy estate;
> (2) the extent to which state law issues predominate;
> (3) the difficulty or unsettled nature of applicable state law;
> (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;
> (5) the federal jurisdictional basis of the proceeding;
> (6) the degree of relatedness of the proceeding to the main bankruptcy case;
> (7) the substance of asserted "core" proceeding;
> (8) the feasibility of severing the state law claims;
> (9) the burden the proceeding places on the bankruptcy court's docket;
> (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties;
> (11) the existence of a right to jury trial; and
> (12) the presence of nondebtor parties in the proceeding.

*Commercial Fin. Servs., Inc. v. Bartmann (In re Commercial Fin. Servs., Inc.)*, 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000).

Several of these factors weigh in favor of abstention. The Hospital's bankruptcy estate was administered long ago. The issues raised in the Motion are purely state law issues. Mr. Chelpaty has already raised the Fee Sharing Dispute in the State Court Action and the state court has affirmatively stated that it has jurisdiction over the parties' dispute. The Weingartner Parties did not file the Motion until after they unsuccessfully sought a determination in the State Court Action that the state court lacked jurisdiction over the dispute. Both parties to the dispute are nondebtor parties and neither is a party to any of the adversary proceedings. Further, Mr. Chelpaty did not participate in the adversary proceedings in which counsel earned the fees in dispute. He never entered an appearance, appeared on any papers, or appeared before the Court in any hearings or other proceedings. His participation in the bankruptcy case was limited to filing proofs of claim with the claims agent. These facts also support permissive abstention.

In addition, notwithstanding the Weingartner Parties' request for a protective order, permissive abstention will not jeopardize the continued confidentiality of the Settlement Agreement. Granted, this Court clearly has jurisdiction to enforce its own orders. *Travelers*

*Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009). *See also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed."). But it is not necessary for the Court to issue another order to protect the confidentiality of the Settlement Agreement. The Settlement Agreement was filed under seal and is subject to the Sealing Order requiring it to remain confidential. In the State Court Action, Mr. Chelpaty filed a Motion to Compel in which he represented that he approved a protective order prepared by the Weingartner Parties' counsel that would require him to keep confidential the contents of confidential documents produced through discovery. *See* Motion to Compel Discovery filed in State Court Action on 11/20/19 – Docket No. 981-2 p. 68 of 114. The Court need not exercise its jurisdiction to enforce the provisions of the Sealing Order. The parties, who are attorneys, can stipulate to a protective order to protect confidential documents, including the Settlement Agreement, as part of the discovery process in the State Court Action.

      The Weingartner Parties' Attorney Charging Lien filed in this Court likewise does not require this Court to adjudicate the parties' dispute. The Weingartner Parties filed an Attorney Charging lien asserting a claim for attorney's fees collected as a result of the Settlement Agreement with QHR with respect to the following members of the UTC: Linda Hoefler and Victor Wilkerson; Judy Ann and Otis Ferguson; Joel and Vivian Crossno; and James and Cynthia Fender. *See* Docket No. 976. In New Mexico, attorney charging liens "have their origin in common law and are governed by equitable principles." *Sowder v. Sowder,* 1999-NMCA-058, ¶ 9, 127 N.M. 114, 117, 977 P.2d 1034, 1037. An attorney "charging lien arises from a recognition that when an attorney assists a client in procuring a judgment or a 'fund recovered by his efforts,' the attorney needs to be paid from that fund for the value of services rendered before

the proceeds are disbursed." *Computer One, Inc. v. Grisham & Lawless, P.A.*, 2008-NMSC-038, ¶ 13, 144 N.M. 424, 428-29, 188 P.3d 1175, 1179-80.[4] The purpose of an attorney charging lien is "to protect attorneys against dishonest clients, who . . . sought to evade payment for the services which enabled them to recover their demand." *Prichard*, 1916-NMSC-046 at ¶ 24, 22 N.M. at 145, 159 P. at 42.

The Weingartner Parties point out that an attorney charging lien must be asserted in the court where the underlying lawsuit was commenced. *See Thompson v. Montgomery & Andrews, P.A.*, 1991-NMCA-086, ¶ 16, 112 N.M. 464, 467, 816 P.2d 532, 536 (an attorney charging lien should be asserted "in the court in which the underlying suit is filed, not in an independent action . . . ."). However, unlike a typical attorney charging lien dispute, the Fee Sharing Dispute raised in the Motion is not between a UTC member and his or her counsel (*i.e.*, between a party to the litigation and the party's counsel); rather the dispute is between attorneys over entitlement to legal fees. In addition, settlement proceeds upon which the attorney's fees were earned have already disbursed under the Settlement Agreement.[5]

In support of their position that this Court should exercise jurisdiction over the dispute between two attorneys and the enforcement of an attorney charging lien, the Weingartner Parties cite *Edwards v. Doe*, 331 Fed. App'x 563 (10th Cir. 2009). In that case, the attorney was a member of one firm when he began representing his client and later left the firm to form a new

---

[4] *See also Cherpelis v. Cherpelis,* 1998-NMCA-079, ¶ 8, 125 N.M. 248, 250, 959 P.2d 973, 975 (a charging lien protects "an attorney's right to 'recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same.'") (quoting *Prichard v. Fulmer,* 1916-NMSC-046, ¶10, 22 N.M. 134, 140, 159 P. 39, 41).

[5] Under New Mexico law, notice of an attorney charging lien "must be given 'before the proceeds [from] the judgment have been distributed.'" *Computer One,* 2008-NMSC-038 at ¶14, 144 N.M. at 429, 188 P.3d at 1180 (quoting *Sowder,* 1999-NMCA-058 at ¶ 14). Even though the Weingartner parties are prepared to deposit the disputed amounts into this Court's registry, it is not clear that the Weingartner Parties have satisfied this requirement.

-11-

firm before the litigation was completed. The attorney's former firm filed an attorney charging lien in the case following settlement. The *Edwards* court held that the district court had supplemental jurisdiction over the dispute between two competing law firms even though the court did not have constructive possession of the disputed funds, and despite the district court not expressly retaining jurisdiction over the fee dispute. *Id.* at 570. The *Edwards* court reasoned that the dispute involved an attorney charging lien which created a "direct connection to the underlying litigation." *Id.* Further, "[t]he fee dispute . . . forms part of the same case or controversy as the plaintiff's personal injury litigation because it involve[d] the two firms that represented the plaintiff in that action and involves an attorney's lien claimed in that action." *Id.* at 571. Consequently, the *Edwards* court concluded that the federal district court had supplemental jurisdiction under 28 U.S.C. § 1367 to adjudicate the parties' fee dispute.[6] *Id.*

The Court acknowledges that, similar to *Edwards*, the Weingartner Parties have filed an attorney charging lien that links the parties' dispute to the litigation that generated the fees. However, while 28 U.S.C. § 1367 grants supplemental jurisdiction to federal district courts,[7] it is not settled whether bankruptcy courts may exercise supplemental jurisdiction under 28 U.S.C. § 1367. *Compare In re Sasson*, 424 F.3d 864, 869 (9th Cir. 2005) ("[T]he bankruptcy court's 'related to' jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28

---

[6] *But see Cooper v. IBM Pers. Pension Plan*, 240 Fed. App'x 133, 135 (7th Cir. 2007) ("The dispute between [the attorney] and his ex-partners arises under a contract. It is unrelated to the dispute between Cooper and IBM, so it cannot be adjudicated under the supplemental jurisdiction."); *Taylor v. Kelsey,* 666 F.2d 53 (4th Cir. 1981) (determining that federal district court lacked supplemental jurisdiction over fee dispute between former co-counsel).

[7] Section 1367(a) of title 28 provides:
> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

U.S.C. § 1367 . . . ."), *with Matter of Walker*, 51 F.3d 562, 571 (5th Cir. 1995) ("[B]ankruptcy courts may not exercise supplemental jurisdiction.").[8] The Tenth Circuit has not decided whether bankruptcy courts can exercise supplemental jurisdiction under the supplemental jurisdiction statute applicable to federal district courts. *Kitts v. Cashco, Inc. (In re Cashco, Inc.)*, Adv. No. 18-1055-j, 2019 WL 4307544, at *4 (Bankr. D.N.M. July 31, 2019); *TMBC, LLC v. McGuire (In re McGuire)*, Adv. No. 13-6072, 2014 WL 322045, at *3 (Bankr. D. Kan. Jan. 28, 2014) ("There is no Tenth Circuit Court of Appeals case on the question of whether a bankruptcy court may exercise supplemental jurisdiction, but the majority of courts have held that a bankruptcy court, being a court whose jurisdiction is more limited than that of a district court, does not have such authority.").

Without deciding whether the Bankruptcy Court could exercise supplemental jurisdiction under 28 U.S.C. § 1367, the Court, in its discretion, declines to do so. Rather, given the uncertainty of whether bankruptcy courts may exercise supplemental jurisdiction and the pendency of the State Court Action, it is appropriate for this Court, in the interest of comity, to permissively abstain from adjudicating the parties' Fee Sharing Dispute.

There is a strong public policy grounded in the interest of comity between federal and state courts and the notion of federalism, that federal courts should not unnecessarily interfere with state court proceedings. *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421, 130 S. Ct. 2323, 2330, 176 L. Ed. 2d 1131 (2010) (the comity doctrine reflects a proper respect for States and their institutions). Mr. Chelpaty has initiated the State Court Action which puts the parties' dispute directly at issue. Resolution of the dispute will require the deciding court to consider the

---

[8]*See also Premium of America, LLC v. Sanchez (In re Premium Escrow Services, Inc.)*, 342 B.R. 390, 402 (Bankr. D. Col. 2006) ("With notable exceptions in the Ninth and Second Circuits, federal courts at all levels have concluded that bankruptcy courts cannot invoke § 1367 as a basis for subject matter jurisdiction.").

fee sharing agreement between the Weingartner Parties and Mr. Chelpaty as well as the attorney-client fee agreements between the attorneys and members of the UTC. Those agreements have never been approved by this Court, nor should they have been, since neither attorney will be compensated from bankruptcy estate property. This Court does not have special expertise with respect to the matters at issue, nor has presiding over the adversary proceedings given the Court any familiarity with the issues raised in the Motion. The parties' Fee Sharing Dispute has already been raised and should be decided in the pending State Court Action. Finally, the State Court Action was pending before the Weingartner Parties filed the Motion, and the state court is ready, willing and able to adjudicate the parties' Fee Sharing Dispute. Out of respect for the state court, this Court declines to adjudicate the parties' dispute.

## CONCLUSION

Based on the foregoing, the Court will permissively abstain from adjudicating the Motion or the Attorney Charging Lien. Accordingly, the Court will deny the Motion. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 10, 2020

COPY TO:

Felicia C Weingartner
Law Offices of Felicia C Weingartner PC
Post Office Box 7627
Albuquerque, NM 87194

Ashley Cook
Christopher Gatton
Attorneys for Tim Chelpaty
Giddens & Gatton Law, P.C.
10400 Academy Rd NE, Suite 350
Albuquerque, NM 87111

-14-

Case 13-00007-j    Doc 983    Filed 03/10/20    Entered 03/10/20 14:49:49 Page 14 of 14